## In re PONZI.

### Claim of VISCARIELLO.

(District Court, D. Massachusetts. September 7, 1926.)

No. 28057.

1. Brokers ⬾39.

Agent, who in good faith sells fraudulent securities for dishonest principal, may recover commissions against principal.

2. Bankruptcy ⬾314(1).

Under Bankruptcy Act, §§ 57g, 67e (Comp. St. §§ 9641, 9651), bankrupt's agent, who in good faith sold fraudulent securities and invested commissions in such securities, has no claim against principal's bankrupt estate.

3. Bankruptcy ⬾339.

Under Bankruptcy Act, § 57g (Comp. St. § 9641), referee, in passing on claim, has power to go into the question of transfers to claimant in fraud of creditors.

4. Bankruptcy ⬾11.

Procedure in bankruptcy proceeding should be kept as direct and informal as possible.

In Bankruptcy. In the matter of Charles Ponzi, bankrupt. Order of the referee disallowing the claim of Clamente Viscariello affirmed.

See, also, 6 F.(2d) 324.

James H. Duffy, of Boston, Mass., for claimant.

Clarence M. Gordon, of Boston, Mass., for trustee.

MORTON, District Judge. The claimant, believing in Ponzi, sold the latter's notes as agent for him on a commission of 10 per cent. He invested the commission which he earned in Ponzi's notes, and now seeks to prove these notes against the estate. The learned referee disallowed the proof, on the ground that the payments of commissions by

Ponzi were transfers in fraud of creditors, received by the person seeking to prove, and therefore, under Bankruptcy Act, § 57g (Comp. St. § 9641), must be returned before the proof could be allowed. The claimant thereupon took this review, which presents an interesting and rather unusual question of law.

Ponzi's notes were swindles, but the claimant did not realize this. He accepted Ponzi's statements and passed them along in good faith to the persons to whom he sold. The situation is analogous to one in which fake precious stones have been sold as genuine by an agent unaware of the fraud which his principal was perpetrating. Would he be entitled to retain against the creditors in bankruptcy of the principal the sums received by him for such services?

[1] As between the honest agent and the fraudulent principal, the contract for commissions, which was legal on its face, could be enforced. A thief who employs an agent to sell a stolen horse cannot defeat the agent's claim for payment for his services without showing that the agent had, or in law is held to have had, knowledge of the theft. As against Ponzi, the claimant could have retained the sums paid him as commissions.

[2] The question, then, is whether Ponzi's bankruptcy alters the claimant's right. As to Ponzi himself, the payments of commissions were clearly in fraud of creditors. He knew that whatever he paid to keep his swindle going must eventually come out of his victims, and he intended that result. By Bankruptcy Act, § 67e (Comp. St. § 9651), such payments may be retained by the payee only when he has received them in good faith and for a present fair consideration. As these payments were received by the claimant in good faith, the ultimate question is whether he gave a present fair consideration for them. Of course, there was consideration in the contract sense; the act uses the word as meaning "value."

The trustee argues that services in putting out fraudulent notes, which increased Ponzi's insolvency, were not of value either to him or to his estate; that under the section in question a transfer or payment by the bankrupt in fraud of creditors is recoverable, except to the extent to which the transferee or payee proves that he gave value—i. e. "fair consideration"—for it in good faith; and that, if the consideration which he gave was not in fact valuable, his proof fails and the transfer or payment is avoided. The situation is one in which one of two innocent parties must lose, and the argument is that the act puts the loss on the person who dealt with the fraudulent bankrupt.

No decision upon the point has come to my attention; it is apparently a case of the first impression. Cases in which the transferee participated in the fraud are clearly distinguishable. It is, however, well settled that under this section the bankruptcy court will examine transfers made by the bankrupt in fraud of his creditors, and even against a transferee who took in good faith will set them aside to the extent that the value of the property conveyed clearly exceeded the value of the consideration paid for it. Geary v. Schwem, 280 Pa. 435, 124 A. 630, 34 A. L. R. 1294; Dreyer v. Kicklighter (D. C.) 228 F. 745 at p. 752; Eby v. Ashley (C. C. A.) 1 F.(2d) 971; Moore on Fraudulent Conveyances, p. 330; 27 Corpus Juris, 544.

The principle on which those cases rest is, I think, decisive of the present controversy. In them the value agreed upon by the bankrupt and the transferee was disregarded by the courts, and a different value substituted, arrived at by applying established rules of valuation. The transferee's bona fide belief in the value agreed upon by him and the bankrupt did not save the transaction. Upon the issue of "fair consideration" under the statute his good faith was regarded immaterial. So here the claimant's honest belief that his services to Ponzi in selling the latter's notes were valuable does not alter the fact that those services were not valuable, but, quite the contrary, were actually detrimental, because they furthered the commission of a crime, and deepened Ponzi's insolvency.

[3, 4] Objection is made by the claimant to the jurisdiction of the referee; the contention being that, as the only matter before him was the allowance of the proof of claim, he had no power to go into the question of transfers in fraud of creditors. The act expressly provides that recipients of fraudulent transfers shall not be allowed to prove claims without first surrendering what they received. Section 57g. This required the referee to go into that matter, if it was raised. See Pirie v. Chi. Title & Trust Co., 182 U. S. 438, 21 S. Ct. 906, 45 L. Ed. 1171. It would be unnecessarily cumbersome and indirect to say that the question can only be raised by an allowance of the claim and a motion to expunge, or by formal pleadings. Bankruptcy is essentially a commercial branch of the law, and its procedure ought to be kept as direct and informal as possible. A party will always be allowed to file such pleadings as are reasonably necessary to make clear his own position, and, if in doubt as to the claims or posi-

tion of the other side, he may apply for an order that they file a more explicit statement.

It follows that the learned referee's order was right, and it is affirmed.