[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 03-15756
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2005
THOMAS K. KAHN
CLERK

D.C. Docket Nos. 03-00255-CV-T-24-TBM & 96-00805-8P1

In Re: OPTICAL TECHNOLOGIES, INC.,

Debtor.

_____

 FINOVA CAPITAL CORP.,

Plaintiff-Appellee,

versus

LARSON PHARMACY INC.,
MARTIN J. KAUFMAN,
BUSHEY DRUG, INC.,
MICHAEL E. LOKENSGARD,
M & J LOKENSGARD, INC.,
FALK'S WOODLAND PHARMACY, INC.,
STEVEN W. PRESTON,
JOHN HOUGLAND,
GROVEPORT PHARMACY, INC.,
WAYNE C. COFIELD,
ROGER D. OBER,
ALPHA VETERINARY CLINIC, INC.,

Defendants-Appellants,

JIMPAT, INC.,

Defendant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

**(September 20, 2005)**

Before TJOFLAT, RONEY and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

This case involves a scheme to use electronic billboards and kiosks (collectively "kiosks") for advertising. The promoters of the scheme[1] executed it in the following way. First, they organized Optical Technologies, Inc., and a group of affiliated companies, Recomm International Display Corp., Recomm Operations, Inc., and Recomm Enterprises, Inc. (hereafter referred to collectively with Optical Technologies, Inc., as "Recomm").[2] Recomm, in turn, (1) convinced several advertising agencies of the merits of advertising via kiosks, and (2) convinced pharmacists, veterinarians, optometrists, and others of the profits they would earn by locating the kiosks at their places of business. Having accomplished this, Recomm (3) acquired the necessary kiosks, leased them to the

---

[1] Jean Francois Vincens and Raymond Manklow.

[2] The promoters formed other Recomm corporations as well. Although it is unnecessary to refer to them by name, all ultimately became part of the Chapter 11 bankruptcy case involved in this appeal.

pharmacists and others (the "Lessees"), assigned the leases to finance companies (the "Lessors"),[3] and (4) entered into advertising contracts with the Lessees. These contracts provided that the Lessees would receive a stated percentage of the fees Recomm received from the advertising agencies. Recomm, the Lessees, and the Lessors contemplated that the Lessees' share of the advertising fees would more than cover the Lessees' lease payments.

The scheme worked for the benefit of all parties for a few years, until mid-1995, when Recomm began to experience cash-flow problems and ceased remitting to the Lessees their portions of the advertising fees. The Lessees responded in two ways. First, they quit paying the Lessors the rent due on the kiosk leases; then, they sued Recomm. As the law suits multiplied, Recomm turned to the bankruptcy court for relief. In January 1996, Recomm filed a Chapter 11 petition[4] in the Bankruptcy Court for the Middle District of Florida.[5]

While reorganization efforts proceeded, Recomm's business was carried on,

---

[3] As far as we can tell from the record, the lease assignments were without recourse.

[4] The laws governing Chapter 11 proceedings are codified at 11 U.S.C. §§ 1101-1174.

[5] Optical Technologies, Inc., filed a Chapter 11 petition in January 1996. Four other Recomm companies quickly followed suit: Recomm Operations, Inc., Recomm Enterprises, Inc., Recomm International Display Corp., and Automated Travel Center, Inc.

made possible in part by contributions from some of the Lessors, including

FINOVA Capital Corporation ("FINOVA"), the appellee in this case. Over the

course of the bankruptcy litigation, several reorganization plans were proposed.

Only the third and fourth plans are relevant here.

The bankruptcy court balked at the third plan—entitled the Third Amended

Joint Plan of Reorganization of the Debtors ("Third Amended Plan")—after

discovering that Recomm essentially had no assets of any value because the kiosk

network had remained in the hands of Recomm affiliates that had not filed for

bankruptcy. The proponents of the plan argued that there had been a de facto

merger between Recomm and these affiliates, but this did not satisfy the court. It

refused to confirm the Third Amended Plan.[6] See In re Optical Techs., Inc., 216

B.R. 989 (Bankr. M.D. Fla. 1997).

In January 1998, just a month after the bankruptcy court denied

---

[6] The Lessees, including appellants, were served with a copy of the Third Amended Plan in June 1997. Among many other provisions, the Third Amended Plan purported to modify the leases of all "participating lessees" that were parties to advertising contracts (with Recomm) and who, prior to the entry of the confirmation order, would have owed rent on or after December 31, 1995. The Third Amended Plan defined "participating lessee" as "a Lessee who is a party to a Lease with a Participating Lessor and a Guarantor with respect to such Lease." The Third Amended Plan listed FINOVA expressly as a participating lessor, and the definition of "participating lessee" in operation includes each of the appellants in this case, a matter we discuss further in part III.B, infra. In addition, the Lessees were scheduled as creditors of the debtors under the Third Amended Plan. At this time, however, appellants were apparently unaware that they might be covered by the Plan, because the Recomm entity with which they had a relationship—Recomm International Display, Ltd.—was not among the entities that had filed for bankruptcy.

confirmation of the Third Amended Plan, the remaining Recomm affiliates—Recomm International Corporation, Recomm International Display Corporation, and Recomm International Display, Ltd. ("RID")—also filed for bankruptcy. All of the Recomm cases were thereafter consolidated. See In re Optical Techs., Inc., 221 B.R. 909 (Bankr. M.D. Fla. 1998). With no questions lingering about whether the primary assets were actually part of the bankruptcy estate, a Fourth Amended Plan of Reorganization of the Debtors ("Fourth Amended Plan" or "Plan") soon evolved. Although the Lessees did not receive a copy of the Plan itself, they were served with a summary of the Plan, which highlighted differences from the Third Amended Plan.[7] They also were served with an Order Modifying Schedule of Confirmation Related Dates, which set a confirmation hearing for April 28, 1998. The Lessees did not appear at the hearing, but attorneys for the Committee of Unsecured Creditors did appear and approved the Fourth Amended Plan. The bankruptcy court confirmed the Plan on May 3, 1998.

Sometime later, after the confirmation order became final and nonappealable, FINOVA sent Statements of Revised Lease Terms and Options

---

[7] The Fourth Amended Plan left unchanged the provisions of the Third Amended Plan purporting to modify the leases of participating Lessees. See supra note 6.

Under Fourth Amended Plan (the "Statements") to the Lessees whose leases it held as Recomm's assignee. FINOVA claimed that the Statements reflected its understanding of the new lease terms as modified by the Fourth Amended Plan. Taking a less charitable view, these Lessees, the appellants here, claimed that the effect of the Statements was "unilaterally [to] revive and [to] extend Leases between non-Debtor entities pursuant to terms which Finova propounded only after the Confirmation Order appeal period had expired." Appellants' Br. 10. Seeking to enforce the terms outlined in these Statements, FINOVA initiated an adversary proceeding against each FINOVA Lessee in the bankruptcy court, essentially asking the court to declare that the Plan modified their leases and that the Statements comported with the Plan.

## I.

In the adversary proceedings, some of these Lessees, responding to FINOVA's prayer for relief, claimed that their leases with RID had expired before RID filed for bankruptcy, reasoning that the Fourth Amended Plan could not have modified a lease that was no longer in effect. The bankruptcy court adopted this logic without reservation or elaboration, concluding with regard to appellant Lokensgard's expired lease, for example: "[f]rom this follows the obvious, that . . . there was no longer a live lease, which could have been modified." The court

6

reached similar conclusions respecting the expired leases of appellants Groveport, Falk's Woodland, and Larson.

Some of the FINOVA Lessees with expired leases also had leases that were still in effect at the time RID filed for Chapter 11 relief. They and the remaining FINOVA Lessees claimed that they were not afforded sufficient notice that their leases would be modified by the Fourth Amended Plan and that the bankruptcy court lacked jurisdiction to enforce such a modification as the leases were exclusively between nondebtor parties. Once again, the bankruptcy court held for the Lessees. Regarding appellant Lokensgard's unexpired lease, the court explained:

> This Court has serious misgivings to accept the proposition that this Court has the power and jurisdiction to modify leases between non-debtors notwithstanding the Order of Confirmation, which was not appealed. Be as it may, this Court is constrained to reject the proposition that these [Lessees], who never filed a proof of claim, who never participated in the Chapter 11 case of Recomm, were given a meaningful opportunity to make an intelligent judgment to agree or not to agree to be a "Participating Lessee."

For its part, FINOVA argued (1) that the confirmation order was res judicata, barring reevaluation of the bankruptcy court's subject matter jurisdiction to enter the confirmation order, and also (2) that the Lessees were estopped from raising affirmative defenses in the first place. The confirmation order provided for

7

a release and waiver of claims and defenses by the Lessees against the Lessors, and, moreover, enjoined the Lessees from prosecuting any claims against the Lessors.

The court rejected FINOVA's argument, essentially concluding that the waiver question was coterminous with the notice question, presumably under the theory that if the Lessees lacked sufficient notice that their leases were being modified, they also lacked sufficient notice to be bound by any of the other provisions of the Fourth Amended Plan or the confirmation order. The court also rejected the res judicata argument. Without addressing it explicitly, the court held that it had the power (and the ongoing obligation) to evaluate its own jurisdiction even if the parties did not raise the issue. The court granted summary judgment for the Lessees, rejecting the lease modifications. See Finova Capital Corp. v. M & J Lokensgard, Inc. (In re Optical Techs., Inc.), Adv. Pro. No. 02-386, slip op. (Bankr. M.D. Fla. Dec. 10, 2002); see also Finova Capital Corp. v. Martin (In re Optical Techs., Inc.), Adv. Pro. No. 02-110, slip op. (Bankr. M.D. Fla. June 17, 2003); Finova Capital Corp. v. Cofield (In re Optical Techs., Inc.), Adv. Pro. No. 02-804, slip op. (Bankr. M.D. Fla. Mar. 26, 2003); Finova Capital Corp. v. Falk's Woodland Pharmacy, Inc. (In re Optical Techs., Inc.), Adv. Pro. No. 02-379, slip op. (Bankr. M.D. Fla. Mar. 10, 2003); Finova Capital Corp. v. Alpha Veterinary

Clinic, Inc. (In re Optical Techs., Inc.), Adv. Pro. No. 02-239, slip op. (Bankr. M.D. Fla. Jan. 8, 2003); Finova Capital Corp. v. Bushey Drug, Inc. (In re Optical Techs., Inc.), Adv. Pro. No. 02-376, slip op. (Bankr. M.D. Fla. Dec. 18, 2002); Finova Capital Corp. v. Larson Pharmacy, Inc. (In re Optical Techs., Inc.), Adv. Pro. No. 02-380, slip op. (Bankr. M.D. Fla. Dec. 16, 2002).

FINOVA appealed, and the district court reversed. It first determined that the confirmation order was res judicata—because it had become final and none of the Lessees had appealed—rendering the Lessees' defenses in FINOVA's adversary proceedings collateral attacks on the confirmation order. As a result, it also held that the bankruptcy court was not authorized to review its subject matter jurisdiction de novo, holding instead that the confirmation order could be voided only "where there is a plain usurpation of power, when a court wrongly extends its jurisdiction beyond the scope of its authority." Finova Capital Corp. v. Larson Pharmacy, Inc., No. 8:03-civ-255-T-24 TBM, slip op. at 13 (M.D. Fla. Oct. 6, 2003) (quotation marks and citations omitted). Finding no such usurpation and rejecting the Lessees' due process and expired lease arguments, the district court refused to void the confirmation order. It held that the Fourth Amended Plan and the lease modifications it contained were binding on the Lessees. The Lessees now appeal the district court's judgment.

9

## II.

In the bankruptcy context, this court sits as a "second court of review" and thus "examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." In re Issac LeaseCo, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004) (quotation marks and citation omitted). Generally, we review legal conclusions by either the bankruptcy court or the district court de novo. In re Financial Federated Title & Trust, Inc., 309 F.3d 1325, 1328-29 (11th Cir. 2002). We review the bankruptcy court's findings of fact for clear error. Id. at 1329.

In considering the bankruptcy court's interpretation of the effect of its own order, we apply a different standard of review. While we have not definitively articulated that standard, we have said that "we are reluctant to disturb a bankruptcy court's judgment interpreting its own earlier order," and that the "bankruptcy judge who has presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the court's rulings." In re Ranch House of Orange-Brevard, Inc., 773 F.2d 1166, 1168 (11th Cir. 1985).

The other circuits that have considered this question have uniformly agreed that our "reluctan[ce] to disturb a bankruptcy court's judgment" in this context is akin to the reluctance we exhibit when exercising abuse of discretion review. See

10

In re Consolidated Indus. Corp., 360 F.3d 712, 716 (7th Cir. 2004) ("We will not reverse a [bankruptcy] court's interpretation of its own order unless it is a 'clear abuse of discretion,' because a court that issued an order is in the best position to interpret it."); In re Dial Business Forms, Inc., 341 F.3d 738, 744 (8th Cir. 2003) (adopting abuse of discretion review and collecting cases from the Second, Fifth, and Sixth Circuits that have done the same). We adopt this view. Accordingly, will defer to the bankruptcy court's interpretation of its order confirming the Fourth Amended Plan, unless it clearly abused its discretion.

**III.**

Appellants now argue (1) that the Fourth Amended Plan on its face did not modify their leases with FINOVA, (2) that the bankruptcy court's rulings effectively decided as much, and (3) that, in the alternative, the bankruptcy court could not have intended that its confirmation order provide the lease-modification result FINOVA seeks because it lacked jurisdiction to effect such a result.

To address these arguments, we proceed as follows. First, we determine whether and to what extent res judicata applies to the bankruptcy court's confirmation order. To the extent that it does, any unambiguous provision of that order must be enforced. Second, we address whether the provisions of the confirmed Plan modify the leases at issue. Finally, we turn to whether the

11

bankruptcy court's confirmation order or parts thereof are void due to a "plain usurpation" of power.

A.

It is established law that a confirmation order satisfies "the requirements of a judgment that can be given [preclusive] effect." In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990). We set forth the requisites of claim preclusion in Justice Oaks as follows:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

Id. at 1550 (citations omitted). Although appellants stress that this case is not really about res judicata, but the interpretation of the Plan—about which they are quite right—they do challenge the res judicata effect of the confirmation order on the basis of the first two res judicata prongs enumerated above. What they are really contending, however, is that no final, nonappealable order has yet been entered that definitively holds the lease-modification provisions of the Fourth Amended Plan to mean what FINOVA says they mean. Appellants suggest in their argument on the first res judicata prong, for example, that the bankruptcy court "recognized the injustice that would be perpetrated by granting Finova's

12

requested declaration, allowing terms to sneak into a confirmed Plan [via the Statements] after the time to appeal had run." Appellants' Br. 42. Addressing the second prong, requiring a final judgment on the merits, appellants similarly argue that the "substantive issue of whether the Leases as modified by the [Statements] are valid and enforceable . . . , or whether they are even consistent with the Confirmation Order has never been litigated." Appellants' Br. 43.

These are not res judicata arguments. The first argument is simply an assertion of the very thing appellants must establish to prevail: namely, that the Statements issued by FINOVA are at odds with the language of the Fourth Amended Plan. The second argument is a reassertion that it is not a question of res judicata, but the same interpretation issue that is central to the resolution of this proceeding. As such, we take appellants at their word when they admonish us that "they do not wish to relitigate what was determined in the Confirmation Order." Appellants' Br. 39. The confirmation order and the provisions of the Fourth Amended Plan are therefore res judicata; what remains for us to determine is what they mean.

## B.

We begin our analysis of the interpretation question by briefly observing what res judicata bars appellants from claiming. Appellants were scheduled as

13

creditors of a bankrupt and were served with copies of the Third Amended Plan, summaries of the Fourth Amended Plan, and copies of the disclosure statement. This satisfies the notice requirement for bankruptcy purposes. See 11 U.S.C. § 523; cf. In re Williamson, 15 F.3d 1037, 1039 (11th Cir. 1994) ("Section 523 . . . makes actual notice sufficient to impose a duty-to-inquire on the creditor." (quoting In re Alton, 837 F.2d 459, 460 (11th Cir. 1988))). Thus, save for the question of voidability of the judgment (i.e., the confirmation order)—addressed below—appellants cannot raise objections to the actual terms of the Fourth Amended Plan or the confirmation order, as these were deemed waived when they failed to object to confirmation. Justice Oaks, 898 F.2d at 1552 (holding that "any . . . claims [that] were actually made, or could have been made" in an objection to confirmation are barred from relitigation in collateral proceedings). Appellants seem to understand this, conceding as they must, for example, that it "is beyond debate that the Chapter 11 Plan modified certain of the rights between the Debtors and certain of their creditors." Appellants' Br. 19. To state things in proverbial terms, however, appellants appear to have tried to cloak a number of wolves in sheep's clothing.

Pointing to isolated definitions of various terms in the Fourth Amended Plan and engaging in strained statutory wordplay, appellants advance numerous

theories culminating in their desired conclusion that the Plan and confirmation order could not bind them in the manner that FINOVA suggests. The basic logic is as follows:

1. the Plan says X about Y;
2. the definition or statute that discusses Y does not explicitly embrace X;
3. therefore, the Plan must actually mean something other than X about Y.

Appellants evaluate the definition of "claim" under the Plan, for example, and determine that its definition precludes Plan terms that would bind creditors vis-à-vis each other. Appellants' Br. 22. They find statutory support for this proposition from 11 U.S.C. § 1141(a), which they read to bind "any debtor, . . . and any creditor,"[8] but not, by implication, one creditor to another. Appellants' Br. 27. They evaluate 11 U.S.C. § 1123 and conclude that it "does not contemplate readjustment of creditor/creditor relations."[9] Appellants' Br. 23.

---

[8] Section 1141(a) simply lists the parties that are bound by a confirmation order; it does not speak to the nature of the relations between or among any such parties.

[9] Section 1123 sets forth requirements for reorganization plans under Chapter 11. Specifically, appellants cited the following parts of the section:

    (a) . . . a plan shall—
        (1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(8) of this title . . . ;
        . . .
        (3) specify the treatment of any class of claims or interests that is impaired under the plan;
        . . .
    (b) . . . a plan may—

They conclude that the confirmation order, because it does not expressly cover the terms that FINOVA now seeks to have enforced, must not have contemplated such terms. Appellants' Br. 26-27.

If the provisions of the Plan and confirmation order unambiguously modify the leases as FINOVA suggests, these arguments either are impermissible collateral attacks barred by res judicata or merge with the jurisdictional argument we take up below. We turn, now, to appellants' two interpretation arguments: first, that the bankruptcy court's holdings in the adversary proceedings (on summary judgment) constitute interpretations of its confirmation order and are thus due abuse of discretion deference; and second, that, in any event, the terms of the Plan and confirmation order are inconsistent with FINOVA's Statements reflecting the purportedly modified leases.

Appellants argue that the "Bankruptcy Court was unable . . . to declare that the Plan and Confirmation Order did what Finova says they did." Appellants' Br. 31. The district court erred in reversing the bankruptcy court, they continue, because the bankruptcy judge "is in the best [position] to interpret the confirmation order." Thus, they argue, the district court should have limited its

_____

(1) impair or leave unimpaired any class of claims, secured or unsecured, or of interests . . . .

16

review to abuse of discretion. Appellants' Br. 32 (citing Ranch House, 773 F.2d at 1167-68).

It is true, as we discuss supra, that a bankruptcy court's interpretation of its own prior order is entitled to substantial deference. The proposition advanced by appellants, however, appears to sweep much more broadly than this, and to insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review. The rationale for deferring to a court's interpretation of its own order does not extend to its analysis of broad legal principles, and we decline to afford additional deference in this area. Other courts have reached similar conclusions. Cf. In re VMS Sec. Litig., 103 F.3d 1317, 1323 (7th Cir. 1996) ("Abuse of discretion is the proper standard of review when a district court interprets its own order . . . . Nonetheless, in applying the abuse of discretion standard, we do not give equal deference to every aspect of a court's decision. The abuse of discretion standard is used to evaluate the . . . court's application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying such decisions are evaluated under the clearly erroneous and de novo standards, respect[ively].") (quotation marks and citations omitted). We must therefore distinguish between those parts of the bankruptcy court's statements that interpret the confirmation order and those that merely analyze legal

17

issues or constitute findings of fact.

Although the bankruptcy court separately considered each appellant's motion for summary judgment, it essentially reached two holdings regarding the Plan and the confirmation order and then applied one or both of these holdings to each motion as warranted. As discussed supra, the court first decided that certain leases were not modified because they had expired before RID filed for bankruptcy. Second, it decided that the remaining leases could not be modified because of notice and jurisdiction problems. To analyze the court's reasoning on both these scores, we examine its holding on appellant Larson's motion for summary judgment, which concerned one lease of each type, expired and unexpired.

The court began by observing that Larson's first lease expired prior to the time RID filed for bankruptcy. It then asserted simply, "From this follows the obvious there was no longer a live lease, which could have been modified." The court provided some additional analysis in its discussion of appellant Cofield's expired lease, emphasizing that the lease had never been assumed by RID in the bankruptcy pursuant to the requirements of 11 U.S.C. § 365.[10] These are all legal

[10] Section 365 governs the status of executory contracts and unexpired leases to which a debtor was bound prior to filing for bankruptcy. Specifically, 11 U.S.C. § 365(b) governs assumptions by trustees of unexpired leases and executory contracts on which the debtor had defaulted. The bankruptcy court appeared to recognize that section 365 does not, by its terms, govern the case here, nor could it; the leases before us are between nondebtor parties. Instead, the court simply asserted that the leases were not separate from the advertising contracts into

conclusions; the bankruptcy court did not state that it was interpreting the Plan or the confirmation order. Thus, the proper scope of review—for the district court and this court—is de novo.

The district court held that "[w]hile arguably the bankruptcy court should not have confirmed a Plan that purported to modify leases that expired prior to RID filing for bankruptcy, the fact of the matter is that under the terms of the Plan, the Plan applies to leases that expired before RID filed for bankruptcy." Finova, slip op. at 20-21.

We agree with this conclusion. The Plan, in the section relating to the modification of leases,[11] indicates that the "present value [taken into account for determining new lease terms] shall be determined as of December 31, 1995, based upon a discount rate of six percent (6%)." Plan, p. 20 (emphasis added). Thus, for purposes of determining whether the Plan purports to modify leases that had expired before RID filed for bankruptcy, this provision suffices to show that any lease that was still in effect as of December 31, 1995, is covered by the Plan. Thus, as a matter of interpreting the Plan, it is of no moment that there was "no longer a

which appellants had entered with Recomm. See, e.g., Finova Capital Corp. v. Cofield, slip op. at 4 ("Even assuming without conceding that the two contracts were separate, a proposition that this Court rejects . . . the Lease Agreement was never assumed . . . .").

[11] The Plan provides specific modifications for kiosk leases in a different section, but that section adopts the method described here to determine the present value of the leases.

live lease" <u>at the time of confirmation</u> that "could have been modified." These terms are plain on their face, and any objection to them could have been raised by appellants at the time of confirmation.

Turning to Larson's unexpired lease, the bankruptcy court again refused to enforce the modifications advanced by FINOVA:

> This Court has serious misgivings to accept the proposition that this Court has the power and jurisdiction to modify leases between non-debtors notwithstanding the Order of Confirmation, which was not appealed. Be as it may, this Court is constrained to reject the proposition that Larson, who never filed a proof of claim, who never participated in the Chapter 11 case of Recomm, was given a meaningful opportunity to make an intelligent judgment to agree or not to agree to be a "Participating Lessee."

Without further analysis, the court granted Larson's motion for summary judgment.

The district court again reversed. It addressed this part of the bankruptcy court's decision in its discussion of due process and notice. Although the district court did not expressly address the question whether the Plan provisions purport to modify the unexpired leases, its discussion indicates that it thought as much: "the [Third and Fourth Amended] Plans contained the formulas for determining the effect of the lease modifications." <u>Finova</u>, slip op. at 20. The district court also rejected the notion that the Plan might apply to some parties, but not to appellants:

> While the Third and Fourth Amended Plan do not refer to Appellees [i.e., appellants here] by name and address, the Plans clearly applied to "Participating Lessees," [i.e., appellants here] and that term was sufficiently

20

defined in the Plans to put Appellees on notice that they were considered Participating Lessees under the Plan.

Id.

Again, we agree with the district court. Even before turning to the Plan's terms, we note that it is evident from the bankruptcy court's own language that it, too, understood the Plan, by its terms, to modify the unexpired leases. Otherwise, its use of the phrases "notwithstanding the Order of Confirmation" and "this Court is constrained to reject the proposition that Larson . . . was given a meaningful opportunity . . . to agree . . . to be a 'Participating Lessee'" would be both unnecessary and out of place. Also telling is that the bankruptcy court did not point to any provision of the Plan or the confirmation order that, by its terms, would somehow exempt or exclude Larson from its scope. In short, the bankruptcy court appears to have been fretting that it had opened Pandora's Box, not denying that it had done so.[12]

---

[12] In fact, language in a related case relieves all doubt that the bankruptcy court fully understood the Fourth Amended Plan to modify the leases:

> The genesis of this controversy is an Order entered by this Court which confirmed the Fourth Amended Plan in the case of Optical Technologies, Inc. and its affiliates on May 13, 1998. The leases under consideration were originally negotiated by Recomm International Display, Ltd. and after January 1994 by Recomm Operations, Inc. These leases were almost simultaneously, or shortly thereafter, assigned to several finance companies, including Finova. Finova and the other participating lessors were major players in the reorganization process and actually it was their participation and willingness to negotiate an accommodation with the hundreds of lessees which made the Fourth Amended Plan of Reorganization feasible which, in turn, [led] to confirmation of

21

That (albeit implicit) interpretation is entitled to abuse of discretion review. It also accords with the district court's reading of the Plan's provisions, which provide that a "Participating Lessee" means "a Lessee who is a party to a Lease with a Participating Lessor and a Guarantor with respect to such Lease."  Plan, p. 10.  The "Participating Lessor" is defined as a lessor that

> (a) is a Lender as of May 30, 1997, (b) elects on or before May 15, 1997, to participate in the Plan and (i) is a proponent of the Plan or (ii) is identified on Exhibit B hereto as a Participating Lessor . . . .[13]

Plan, p. 10.  Lest anything be left to doubt, the first entity listed as a Participating Lessor in Exhibit B of the Plan is FINOVA.  Plan, Exh. B.  In short, there is no ambiguity with which to wrestle here.  Even appellants seem to concede that they

---

the Plan.  The Fourth Amended Plan provided, inter alia, that Finova, as a "Participating Lessor," agreed to discount the amounts due from the lessee[s], and to waive certain defaults under the leases and in exchange the order determined that the leases, as modified, were valid and binding between the lease financing companies[, including FINOVA,] and the respective lessees.  (Page 19, ¶ 16(iii).)  The Confirmation Order further provided that the lessees and the guarantor defendants waive all claims and defenses against Finova and permanent[ly] enjoin[ed] them from pursuing lease-related claims and defenses against Finova.  (Page 19, ¶ 16(iv).)  The Fourth Amended Plan also permanently enjoined the lessee[s] . . . from commencing or continuing any action in any manner in any place that does not comply with or is inconsistent with the provisions of the Order of Confirmation.  (Page 23, ¶ 22).  The Plan gave an option to the lessees either to accept the modified leases and agree to be bound by it or opt out and litigate their claims against the leasing companies, including Finova, in the multi-district litigation currently pending before the Honorable Judge Beer, United States District Judge of the Eastern District of Louisiana.

In re Optical Techs., Inc., 272 B.R. 771, 773 (Bankr. M.D. Fla. 2001).

[13] Participating Lessors must meet a number of other requirements relating to financing that are not in question here.

22

are contemplated by these terms of the Plan: "There can be no question that the Lessees in the instant appeal are Lessees of Lessors as defined in the Plan." Appellants' Br. 24. The bankruptcy court and the district court correctly concluded that the terms of the Plan embrace appellants and their leases with FINOVA. The Plan therefore modifies the leases—both expired and unexpired—unless part or all of the confirmation order must be voided.

## C.

In ruling on appellant Cofield's motion for summary judgment, the bankruptcy court announced that it was "satisfied that it has the authority to constantly review its subject matter jurisdiction at every step in a case or proceeding." It did review its subject matter jurisdiction in granting summary judgment to appellants Lokensgard, Larson, and Bushey Drug, noting deep reluctance "to accept the proposition that this Court has the power and jurisdiction to modify leases between non-debtors." Hence, the court then seems to have held at least in part for appellants on the subject matter jurisdiction issue.[14]

"Pursuant to Rule 60(b)(4) [of the Federal Rules of Civil Procedure], a court may relieve a party from a final judgment or order based on a finding that the

---

[14] The bankruptcy court's holdings on summary judgment are not the model of clarity. The holdings on the unexpired leases appear to have been based on a combination of due process and subject matter jurisdiction concerns.

judgment is void." Burke v. Smith, 252 F.3d 1260, 1263 (11th Cir. 2001). "However, it is well-settled that a mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4)." Oakes v. Horizon Fin., S.A., 259 F.3d 1315, 1319 (11th Cir. 2001). Furthermore, as a general matter, parties to a proceeding that do not raise jurisdictional objections are entirely barred from attacking jurisdiction collaterally. See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377, 60 S. Ct. 317, 320, 84 L. Ed. 329 (1940) ("The [bankruptcy] court has the authority to pass upon its own jurisdiction[;] and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action."); id. at 375, 60 S. Ct. at 319 ("If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it."). The only exception to this arises from a constitutionally defective failure of process. See id. at 376, 60 S. Ct. at 319 ("The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to

act.").

The confirmation order is clearly not void as to appellants. Under Chicot County, because they were parties to the bankruptcy proceedings and could have challenged jurisdiction in the confirmation stage of the case, appellants must demonstrate that they were denied due process in order to challenge the bankruptcy court's jurisdiction collaterally. As discussed supra, appellants had constitutionally adequate notice of the confirmation proceedings. At this stage of the case, they do not allege any defect of process. As a result, the voidability argument fails, as does appellants' only basis for challenging the bankruptcy court's prior jurisdiction.

Appellants insist alternative theories support their collateral attack on the bankruptcy court's subject matter jurisdiction: (1) that courts may evaluate their own jurisdiction "at each stage of the proceedings"; (2) that bankruptcy courts may, at their discretion, "delete the provisions of a Plan" that they later determine to fall outside of their jurisdiction; and (3) that the adversary proceedings (initiated by FINOVA) renewed the bankruptcy court's ability to evaluate its jurisdiction. They go on to conclude that both the provisions of the Plan that modified leases between nondebtor parties and FINOVA's Statements reflecting those modifications are beyond the jurisdiction of the bankruptcy court.

Appellants' first basis for collateral review of the jurisdiction issue is

untenable. If courts could evaluate the jurisdiction that they may or may not have had to issue a final judgment, the rules of res judicata and the requirements of voidness would be entirely short-circuited. Appellants cite a long list of cases for their proposition, but the cases describe only a court's power to address its own jurisdiction in a present proceeding and are therefore inapposite.[15]

Appellants cite two cases for their second basis for collateral review. The first, Wayne United Gas Co. v. Owens-Ill. Glass Co., 300 U.S. 131, 57 S. Ct. 382, 81 L. Ed. 557 (1937), does not involve collateral review. That case discusses the ability of a bankruptcy court to grant a motion for rehearing after the period for appeal has passed. Id. at 137, 57 S. Ct. at 385 ("The granting of a rehearing is within the court's sound discretion . . . ."). Upon rehearing, the court is empowered to modify its decree, but this is because the granting of rehearing vacates the prior order. That was not the case in the instant adversary proceedings for declaratory relief. In the second case appellants cite, In re A.J. Mackay Co., 50 B.R. 756 (D. Utah 1985), the district court deleted portions of a confirmed Plan that would have bound a third party that was not a party to the

---

[15] One of the cases appellants cite, In re U.S.H. Corp. of N.Y., 280 B.R. 330 (Bankr. S.D.N.Y. 2002), addresses the bankruptcy court's duty to evaluate its own jurisdiction in a post-confirmation adversary proceeding, but, again, this case focuses on the court's jurisdiction in that proceeding only. It does not suggest that, in a collateral proceeding, the court may void parts of its prior order based on second thoughts about its jurisdiction. The same is true of Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994), also cited by appellants.

bankruptcy proceedings.  Id. at 761 ("These provisions are beyond the authority of the bankruptcy court to confirm, since Clayton Mackay is not a party to this lawsuit and these provisions do not involve assets of the bankruptcy estate.").  A.J. Mackay Co. is not applicable here, as appellants were scheduled as creditors in the Recomm bankruptcy proceedings.

Appellants' third and final basis for granting collateral review is that the bankruptcy court necessarily has the authority to determine whether it has jurisdiction to enter a declaratory judgment interpreting its confirmation order.  In any proceeding, of course, a court must dismiss the case if it determines that it lacks subject matter jurisdiction to proceed.  Love v. Turlington, 733 F.2d 1562, 1564 (11th Cir. 1984).  That jurisdictional question was surely not in play here, however, as the bankruptcy court obviously had jurisdiction to entertain an adversary proceeding to determine the scope of its confirmation order.  See Local Loan Co. v. Hunt, 292 U.S. 234, 239, 54 S. Ct. 695, 697, 78 L. Ed. 1230 (1934) (holding that courts have jurisdiction to interpret and enforce their own orders).  As we have already discussed, bankruptcy courts may not rely on this basis of jurisdiction in a present proceeding to tunnel back to prior judgments for the purpose of reassessing prior jurisdiction de novo.

In sum, appellants are barred from collaterally attacking the bankruptcy

27

court's jurisdiction. The bankruptcy court is bound to enforce the terms of the Plan as written and as reflected in the Statements.

## IV.

The judgment of the district court is

**AFFIRMED.**