(Slip Opinion)     OCTOBER TERM, 2008     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TRAVELERS INDEMNITY CO. ET AL. *v.* BAILEY ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 08–295.   Argued March 30, 2009—Decided June 18, 2009*

As part of the 1986 reorganization plan of the Johns-Manville Corpora-
   tion (Manville), an asbestos supplier and manufacturer of asbestos-
   containing products, the Bankruptcy Court approved a settlement
   providing that Manville's insurers, including The Travelers Indem-
   nity Company and related companies (Travelers), would contribute to
   the corpus of the Manville Personal Injury Settlement Trust (Trust),
   and releasing those insurers from any "Policy Claims," which were
   channeled to the Trust.  "Policy Claims" include, as relevant here,
   "claims" and "allegations" against the insurers "based upon, arising
   out of or relating to" the Manville insurance policies.  The settlement
   agreement and reorganization plan were approved by the Bankruptcy
   Court (1986 Orders) and were affirmed by the District Court and the
   Second Circuit.  Over a decade later plaintiffs began filing asbestos
   actions against Travelers in state courts (Direct Actions), often seek-
   ing to recover from Travelers not for Manville's wrongdoing but for
   Travelers' own alleged violations of state consumer-protection stat-
   utes or of common law duties.  Invoking the 1986 Orders, Travelers
   asked the Bankruptcy Court to enjoin 26 Direct Actions.  Ultimately,
   a settlement was reached, in which Travelers agreed to make pay-
   ments to compensate the Direct Action claimants, contingent on the
   court's order clarifying that the Direct Actions were, and remained,
   prohibited by the 1986 Orders.  The court made extensive factual
   findings, uncontested here, concluding that Travelers derived its
   knowledge of asbestos from its insurance relationship with Manville
   and that the Direct Actions are based on acts or omissions by Travel-

——————

   *Together with No. 08–307, *Common Law Settlement Counsel* v. *Bai-
ley et al.,* also on certiorari to the same court.

ers arising from or related to the insurance policies. It then approved the settlement and entered an order (Clarifying Order), which provided that the 1986 Orders barred the pending Direct Actions and various other claims. Objectors to the settlement (respondents here) appealed. The District Court affirmed, but the Second Circuit reversed. Agreeing that the Bankruptcy Court had jurisdiction to interpret and enforce the 1986 Orders, the Circuit nevertheless held that the Bankruptcy Court lacked jurisdiction to enjoin the Direct Actions because those actions sought not to recover based on Manville's conduct, but to recover directly from Travelers for its own conduct.

*Held:* The terms of the injunction bar the Direct Actions against Travelers, and the finality of the Bankruptcy Court's 1986 Orders generally stands in the way of challenging their enforceability. Pp. 9–18.

(a) The Direct Actions are "Policy Claims" enjoined as against Travelers by the 1986 Orders, which covered, *inter alia,* "claims" and "allegations" "relating to" Travelers' insurance coverage of Manville. In a statute, "[t]he phrase 'in relation to' is expansive," *Smith* v. *United States*, 508 U. S. 223, 237, and so is its reach here. While it would be possible to suggest that a "claim" only relates to Travelers' insurance coverage if it seeks recovery based upon Travelers' specific contractual obligation to Manville, "allegations" is not amenable to such a narrow construction and clearly reaches factual assertions that relate in a more comprehensive way to Travelers' dealings with Manville. The Bankruptcy Court's detailed factual findings place the Direct Actions within the terms of the 1986 Orders. Contrary to respondents' argument, the 1986 Orders contain no language limiting "Policy Claims" to claims derivative of Manville's liability. Even if, before the entry of the 1986 Orders, Travelers understood the proposed injunction to bar only such derivative claims, where a court order's plain terms unambiguously apply, as they do here, they are entitled to their effect. If it is black-letter law that an unambiguous private contract's terms must be enforced irrespective of the parties' subjective intent, it is also clear that a court, such as the Bankruptcy Court here, should enforce a court order, a public governmental act, according to its unambiguous terms. Pp. 10–13.

(b) Because the 1986 Orders became final on direct review over two decades ago, whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Second Circuit in 2008 and is not properly before this Court. The Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders, see *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 239, and it explicitly retained jurisdiction to enforce its injunctions when it issued the 1986 Orders. The Second Circuit erred in holding the 1986 Orders unenforceable according to their terms on the ground that the

Syllabus

Bankruptcy Court had exceeded its jurisdiction in 1986. On direct appeal of the 1986 Orders, any objector was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns *sua sponte*. But once those orders became final on direct review, they became res judicata to the " 'parties and those in privity with them.' " *Nevada* v. *United States*, 463 U. S. 110, 130. So long as respondents or those in privity with them were parties to Manville's bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders. The Second Circuit's willingness to entertain this collateral attack cannot be squared with res judicata and the practical necessity served by that rule. Almost a quarter-century after the 1986 Orders were entered, the time to prune them is over. Pp. 13–16.

(c) This holding in narrow. The Court neither resolves whether a bankruptcy court, in 1986 or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing, nor decides whether any particular respondent is bound by the 1986 Orders, which is a question that the Second Circuit did not consider. Pp. 17–18.

517 F. 3d 52, reversed and remanded.

SOUTER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, BREYER, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

Nos. 08–295 and 08–307

———————

THE TRAVELERS INDEMNITY COMPANY, ET AL.,
PETITIONERS
08–295             *v.*
PEARLIE BAILEY ET AL.

COMMON LAW SETTLEMENT COUNSEL,
PETITIONER
08–307             *v.*
PEARLIE BAILEY ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 18, 2009]

JUSTICE SOUTER delivered the opinion of the Court.

As an element of the 1986 reorganization plan of the Johns-Manville Corporation (Manville), the United States Bankruptcy Court for the Southern District of New York enjoined certain lawsuits against Manville's insurers, including The Travelers Indemnity Company and its affiliates (Travelers). The question is whether the injunction bars state-law actions against Travelers based on allegations either of its own wrongdoing while acting as Manville's insurer or of its misuse of information obtained from Manville as its insurer. We hold that the terms of the injunction bar the actions and that the finality of the Bankruptcy Court's orders following the conclusion of direct review generally stands in the way of challenging

the enforceability of the injunction.

## I

From the 1920s to the 1970s, Manville was, by most accounts, the largest supplier of raw asbestos and manu-facturer of asbestos-containing products in the United States, *In re Johns-Manville Corp.*, 517 F. 3d 52, 55–56 (CA2 2008), and for much of that time Travelers was Manville's primary liability insurer. *In re Johns-Manville Corp.*, No. 82 B 11656 etc. (Bkrtcy. Ct. SDNY 2004), App. to Pet. for Cert. in No. 08–295, pp. 111a–112a (hereinafter Bkrtcy. Ct. Op.). As studies began to link asbestos expo-sure to respiratory disease and thousands of lawsuits were filed against Manville, Travelers, as the insurer, worked closely with Manville to learn what its insured knew and to assess the dangers of asbestos exposure; it evaluated Manville's potential liability and defenses, and paid Man-ville's litigation costs. *Id.*, at 114a–117a, 121a–122a. In 1982, the prospect of overwhelming liability led Manville to file for bankruptcy protection in the Southern District of New York.

It thus became incumbent on the Bankruptcy Court to devise "a plan of reorganization for [Manville] which would provide for payment to holders of present or known asbestos health related claims . . . and [to] those persons who had not yet manifested an injury but who would manifest symptoms of asbestos-related illnesses at some future time." *In re Johns-Manville Corp.*, 97 B. R. 174, 176 (Bkrtcy. Ct. SDNY 1989). The ensuing reorganization plan created the Manville Personal Injury Settlement Trust (Trust) to pay all asbestos claims against Manville, which would be channeled to the Trust. See *Kane* v. *Johns-Manville Corp.*, 843 F. 2d 636, 640–641 (CA2 1988); *In re Johns-Manville Corp.*, 340 B. R. 49, 54 (SDNY 2006). The Trust has since paid out more than $3.2 billion to over 600,000 claimants. Bkrtcy. Ct. Op. 136a–137a.

In the period leading up to the reorganization, Manville and its insurers litigated over the scope and limits of liability coverage, and Travelers faced suits by third parties, such as Manville factory workers and vendors of Manville products, seeking compensation under the insurance policies. There was also litigation among the insurers themselves, who brought various indemnity claims, contribution claims, and cross-claims. *Id.*, at 132a–134a. In a settlement described as the "cornerstone" of the Manville reorganization, the insurers agreed to provide most of the initial corpus of the Trust, with a payment of $770 million to the bankruptcy estate, $80 million of it from Travelers. *MacArthur Co.* v. *Johns-Manville Corp.*, 837 F. 2d 89, 90 (CA2 1988); Bkrtcy. Ct. Op. 134a; *In re Johns-Manville Corp.*, 68 B. R. 618, 621 (Bkrtcy. Ct. SDNY 1986).

There would have been no such payment without the injunction at the heart of the present dispute. The December 18, 1986, order of the Bankruptcy Court approving the insurance settlement agreements (Insurance Settlement Order) provides that, upon the insurers' payment of the settlement funds to the Trust, "all Persons are permanently restrained and enjoined from commencing and/or continuing any suit, arbitration or other proceeding of any type or nature for Policy Claims against any or all members of the Settling Insurer Group." App. to Pet. for Cert. in No. 08–295, at 446a. The Insurance Settlement Order goes on to provide that the insurers are "released from any and all Policy Claims," which are to be channeled to the Trust. *Ibid.* The order defines "Policy Claims" as "any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against . . . any or all members of the Settling Insurer Group based upon, arising out of or relating to any or all of the Policies." *Id.*, at 439a. The insurers were

entitled "to terminate the settlements if the injunctive orders [were] not issued or if they [were] set aside on appeal." *MacArthur*, *supra*, at 90.

The Insurance Settlement Order was incorporated by reference in the Bankruptcy Court's December 22, 1986, order confirming Manville's Second Amended and Re-stated Plan of Reorganization (Confirmation Order).[1] App. to Pet. for Cert. in No. 08–295, at 271a–272a. Both the Confirmation Order and the Insurance Settlement Order (collectively, 1986 Orders) were affirmed by the District Court, see *In re Johns-Manville Corp.*, 78 B. R. 407 (SDNY 1987), and the Court of Appeals for the Second Circuit, see *MacArthur*, *supra; Kane*, *supra.*

Nonetheless, over a decade later plaintiffs started filing asbestos actions against Travelers in various state courts, cases that have been spoken of in this litigation as Direct Actions. They are of two sorts. The Statutory Direct Actions are brought under state consumer-protection statutes, and allege that Travelers conspired with other insurers and with asbestos manufacturers to hide the dangers of asbestos and to raise a fraudulent "state of the art" (or "no duty to warn") defense to personal injury claims. Bkrtcy. Ct. Op. 140a–143a. The Common Law Direct Actions claim that Travelers violated common law duties by failing to warn the public about the dangers of asbestos or by acting to keep its knowledge of those dangers from the public. *Id.*, at 143a–147a. It is undisputed that many of the plaintiffs seek to recover from Travelers, not indirectly for Manville's wrongdoing, but for Travelers' own alleged violations of state law. See 517 F. 3d, at 63.[2]

---

[1] The Confirmation Order itself contains an additional injunction barring certain claims against the settling insurance companies. Bkrtcy. Ct. Op. 286a–288a. That injunction does not bear on our decision, and we do not consider it.

[2] A true "direct action" suit is "[a] lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing

In 2002, Travelers invoked the terms of the 1986 Orders in moving the Bankruptcy Court to enjoin 26 Direct Actions pending in state courts. *Id.*, at 58. The court issued a temporary restraining order, repeatedly extended, and referred the parties to mediation, which led to settlements between Travelers and three sets of plaintiffs in both Statutory and Common Law Direct Actions. Bkrtcy. Ct. Op. 103a–104a. Under the settlement terms Travelers would pay more than $400 million to settlement funds to compensate Direct Action claimants, contingent upon the entry of an order by the Bankruptcy Court clarifying that the Direct Actions were, and remained, prohibited by the 1986 Orders. *Id.*, at 150a–152a. The settlement requires claimants seeking payment from the settlement funds to grant Travelers a release from further liability, separate and apart from Travelers' protection under the 1986 Orders. *Id.*, at 151a–152a.

After notice of the settlement was given to potential claimants, the Bankruptcy Court (the same judge who had issued the 1986 Orders) held an evidentiary hearing and made extensive factual findings that are not challenged here. The court determined that "Travelers['] knowledge of the hazards of asbestos was derived from its nearly three decade insurance relationship with Manville and the performance by Travelers of its obligations under the Policies, including through the underwriting, loss control activities, defense obligations and generally through its lengthy and confidential insurance relationship under the

---

compensation indirectly through the insured." Black's Law Dictionary 491 (8th ed. 2004). Because many of the suits at issue seek to hold Travelers liable for independent wrongdoing rather than for a legal wrong by Manville, they are not direct actions in the terms of strict usage. Nonetheless, because the suits are referred to as "direct actions" in the decisions of the Bankruptcy Court, the District Court, and the Court of Appeals, we call them that as well, in the interest of simplicity. See 517 F. 3d, at 55, n. 4.

policies." *Id.*, at 128a–129a. In sum, the Bankruptcy Court found that "Travelers learned virtually everything it knew about asbestos from its relationship with Manville." *Id.*, at 131a.

As for the Direct Actions, the court saw "[t]he gravamen of the Statutory Direct Action Lawsuits" as "center[ing] on Travelers['] defense of Manville in asbestos-related claims." *Id.*, at 142a. The court read the "alleged factual predicate" of the Common Law Direct Actions as being "essentially identical to the statutory actions: Travelers . . . influence[d] Manville's purported failure to disclose knowledge about asbestos hazards; Travelers defended Manville; Travelers advanced the state of the art defense; and Travelers coordinated Manville's national defense effort." *Id.*, at 147a (citations omitted). The court understood "the direct action claims against Travelers [to be] inextricably intertwined with Travelers['] long relationship as Manville's insurer," *id.*, at 169a, and found that "[a]fter the Court preliminarily enjoined prosecution of Direct Action Claims against Travelers pending final ruling on the merits, certain plaintiffs' lawyers violated the letter and the spirit of this Court's rulings by simply deleting the term 'Manville' from their complaints—but leaving the substance unchanged," *id.*, at 147a.

Hence, the court's conclusion that "[t]he evidence in this proceeding establishes that the gravamen of Direct Action Claims were acts or omissions by Travelers arising from or relating to Travelers['] insurance relationship with Manville." *Id.*, at 173a. Finding that the "claims against Travelers based on such actions or omissions necessarily 'arise out of' and [are] 'related to'" the insurance policies, *ibid.*, which compelled Travelers to defend Manville against asbestos-related claims, *id.*, at 173a–176a, the Bankruptcy Court held that the Direct Actions "are—and always have been—permanently barred" by the 1986 Orders, *id.*, at 170a.

The settlement was accordingly approved and an order dated August 17, 2004 (Clarifying Order), was entered, providing that the 1986 Orders barred the pending Direct Actions and "[t]he commencement or prosecution of all actions and proceedings against Travelers that directly or indirectly are based upon, arise out of or relate to Travelers['] insurance relationship with Manville or Travelers['] knowledge or alleged knowledge concerning the hazards of asbestos," including claims for contribution or indemnification. *Id.*, at 95a. The Clarifying Order does not, however, block "the commencement and prosecution of claims against Travelers by policyholders other than Manville . . . for insurance proceeds or other obligations arising under any policy of insurance provided by Travelers to a policyholder other than Manville." *Id.*, at 96a. The Clarifying Order also separately disclaims that it enjoins bringing

> "claims arising from contractual obligations by Travelers to policyholders other than Manville, as long as Travelers['] alleged liability or the proof required to establish Travelers['] alleged liability is unrelated to any knowledge Travelers gained from its insurance relationship with Manville or acts, errors, omissions or evidence related to Travelers['] insurance relationship with Manville." *Ibid.*

Some individual claimants and Chubb Indemnity Insurance Company (Chubb), respondents before this Court, objected to the settlement and subsequently appealed.[3] So far as it matters here, the District Court affirmed, but the Court of Appeals for the Second Circuit reversed. In presenting the case to the Second Circuit the objectors argued that the Direct Actions fall outside the scope of the

---

[3] Chubb is a codefendant with Travelers in certain Common Law Direct Actions, and the Clarifying Order prevents it from bringing contribution and indemnity claims against Travelers under certain circumstances. See Brief for Respondent Chubb 16.

1986 Orders and that the Clarifying Order erroneously expands those orders to bar actions beyond the Bankruptcy Court's subject-matter jurisdiction and statutory authority. Travelers and the settling claimants responded that the Clarifying Order is consistent with the terms of the 1986 Orders, that this reading of the 1986 Orders does not generate any jurisdictional or other statutory concerns, and that the Second Circuit's prior rejection of a challenge to the Insurance Settlement Order in *MacArthur*, 837 F. 2d 89, is controlling.

In its opinion explaining the judgment under review here, the Second Circuit recognized that "[i]t is undisputed that the bankruptcy court had continuing jurisdiction to interpret and enforce its own 1986 orders," and that "there is no doubt that the bankruptcy court had jurisdiction to clarify its prior orders." 517 F. 3d, at 60–61. It also had "little doubt that, in a literal sense, the instant claims against Travelers 'arise out of' its provision of insurance coverage to Manville," *id.*, at 67, and the court emphasized that "[t]he bankruptcy court's extensive factual findings regarding Manville's all-encompassing presence in the asbestos industry and its extensive relationship with Travelers support this notion" that the subjects of the Clarifying Order fall within the scope of the 1986 Orders, *ibid.* The Circuit nevertheless held that the Bankruptcy Court could not, in enforcing the 1986 Orders, "enjoin claims over which it had no jurisdiction," *id.*, at 61, and that "[t]he ancillary jurisdiction courts possess to enforce their own orders is itself limited by the jurisdictional limits of the order sought to be enforced," *id.*, at 65, n. 22 (internal quotation marks omitted). See also *id.*, at 65 ("The fact that our case involves a clarification of the bankruptcy court's prior order does not alter the jurisdictional predicate necessary to enjoin third-party non-debtor claims").

The Court of Appeals found that "the jurisdictional

analysis by the lower courts falls short," *id.*, at 62, in failing to recognize the significance of the fact that the Direct Actions "do not seek to collect on the basis of Manville's conduct," but rather "seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct," *id.*, at 63. The Court of Appeals held that the Bankruptcy Court mistook its jurisdiction when it enjoined "claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate," because "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate." *Id.*, at 66.

In reaching this result, the court explained that its prior decision in *MacArthur* was not controlling, as there a Manville asbestos distributor had challenged the authority of the Bankruptcy Court to bar it from collecting out of Manville's own insurance coverage. 517 F. 3d, at 62. Here, by contrast, "Travelers candidly admits that both the statutory and common law claims seek damages from Travelers that are *unrelated* to the policy proceeds." *Id.*, at 63. The Court of Appeals also considered the 1994 enactment of 11 U. S. C. §524(g), which provides explicit statutory authority for a bankruptcy court to order the channeling of claims against a debtor's insurers to the bankruptcy estate, but the court understood §524(g) to be "limited to situations where a third party has derivative liability for the claims against the debtor" and "was not intended to reach non-derivative claims." 517 F. 3d, at 68 (ellipsis and internal quotation marks omitted).

We granted certiorari, 555 U. S. ___ (2009) and now reverse.

## II

The Bankruptcy Court correctly understood that the Direct Actions fall within the scope of the 1986 Orders, as

suits of this sort always have. The Court of Appeals, however, believed it was free to look beyond the terms of the 1986 Orders and so treated the action as one "concern[ing] the outer reaches of a bankruptcy court's jurisdiction." 517 F. 3d, at 55. This, we think, was error. If this were a direct review of the 1986 Orders, the Court of Appeals would indeed have been duty bound to consider whether the Bankruptcy Court had acted beyond its subject-matter jurisdiction. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006); *Mansfield, C. & L. M. R. Co.* v. *Swan*, 111 U. S. 379, 382 (1884). But the 1986 Orders became final on direct review over two decades ago, and Travelers' response to the Circuit's jurisdictional ruling is correct: whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us.

## A

We begin at our point of agreement with the Second Circuit, that the Direct Actions are "Policy Claims" enjoined as against Travelers by the language of the 1986 Orders, which covered "claims, demands, allegations, duties, liabilities and obligations" against Travelers, known or unknown at the time, "based upon, arising out of or relating to" Travelers' insurance coverage of Manville. App. to Pet. for Cert. in No. 08–295, at 439a. In a statute, "[t]he phrase 'in relation to' is expansive," *Smith* v. *United States*, 508 U. S. 223, 237 (1993), and so is its reach here, where "Policy Claims" covers not only "claims," but even "allegations" relating to the insurance coverage. Although it would be possible (albeit quite a stretch) to suggest that a "claim" only relates to Travelers' insurance coverage if it seeks recovery based upon Travelers' specific contractual obligation to Manville, "allegations" is not even remotely amenable to such a narrow construction and clearly

reaches factual assertions that relate in a more compre-
hensive way to Travelers' dealings with Manville.

The Bankruptcy Court's uncontested factual findings
drive the point home. In substance, the Bankruptcy Court
found that the Direct Actions seek to recover against
Travelers either for supposed wrongdoing in its capacity
as Manville's insurer or for improper use of information
that Travelers obtained from Manville as its insurer.
These actions so clearly involve "claims" (and, all the more
so, "allegations") "based upon, arising out of or relating to"
Travelers' insurance coverage of Manville, that we have no
need here to stake out the ultimate bounds of the injunc-
tion. There is, of course, a cutoff at some point, where the
connection between the insurer's action complained of and
the insurance coverage would be thin to the point of ab-
surd. See *California Div. of Labor Standards Enforcement*
v. *Dillingham Constr., N. A., Inc.*, 519 U. S. 316, 335
(1997) (SCALIA, J., concurring) ("[A]pplying the 'relate to'
provision according to its terms was a project doomed to
failure, since, as many a curbstone philosopher has ob-
served, everything is related to everything else"); *New
York State Conference of Blue Cross & Blue Shield Plans*
v. *Travelers Ins. Co.*, 514 U. S. 645, 655 (1995). But the
detailed findings of the Bankruptcy Court place the Direct
Actions within the terms of the 1986 Orders without
pushing the limits.

Respondents argue that this is just revisionism perpe-
trated by the Clarifying Order, which they say improperly
expanded the scope of the 1986 Orders to enjoin the Direct
Actions. Their position appears to be that the 1986 Orders
only bar actions against insurers seeking to recover de-
rivatively for Manville's wrongdoing, but not actions to
recover for Travelers' own misconduct, no matter what its
relationship to Travelers' coverage of Manville. But this
simply is not what the 1986 Orders say. The definition of
"Policy Claims" contains nothing limiting it to derivative

actions, and there is language in the 1986 Orders directly to the contrary: The 1986 Orders not only enjoin bringing expansively defined "Policy Claims" against the settling insurers, but they go on to provide that the injunction has no application to a claim previously brought against a settling insurer "seeking any and all damages (other than or in addition to policy proceeds) for bad faith or other insurer misconduct alleged in connection with the handling or disposition of claims." App. to Pet. for Cert. in No. 08–295, at 446a. There is no doubt about the implication, that this same sort of claim brought after the 1986 Orders become final will be barred. There would have been no need for this exception if "Policy Claims" were limited to claims against Travelers for Manville's wrongdoing.

Respondents seek further refuge in evidence that before entry of the 1986 Orders some parties to the Manville bankruptcy (including Travelers) understood the proposed injunction to bar only claims derivative of Manville's liability. They may well be right about that: we are in no position to engage in factfinding on this point, but there certainly are statements in the record that seem to support respondents' contention. See App. for Respondent Chubb 1a–3a, 5a, 13a–14a. But be that as it may, where the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect. See, *e.g., Negrón-Almeda* v. *Santiago*, 528 F. 3d 15, 23 (CA1 2008) ("[A] court must carry out and enforce an order that is clear and unambiguous on its face"); *United States* v. *Spallone*, 399 F. 3d 415, 421 (CA2 2005) ("[I]f a judgment is clear and unambiguous, a court must adopt, and give effect to, the plain meaning of the judgment" (internal quotation marks omitted)). If it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent, see 11 R. Lord, Williston on Contracts §30:4 (4th ed. 1999), it is all the clearer that a court should enforce a court order,

a public governmental act, according to its unambiguous terms.[4]  This is all the Bankruptcy Court did.

## B

Given the Clarifying Order's correct reading of the 1986 Orders, the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order.  The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.  See *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 239 (1934).  What is more, when the Bankruptcy Court issued the 1986 Orders it explicitly retained jurisdiction to enforce its injunctions.  See App. to Pet. for Cert. in No. 08–295, at 284a–286a.

The Court of Appeals, however, went on to a different jurisdictional enquiry.  It held that the 1986 Orders could not be enforced according to their terms because, as the panel saw it, the Bankruptcy Court had exceeded its jurisdiction when it issued the orders in 1986.  We think, though, that it was error for the Court of Appeals to re-evaluate the Bankruptcy Court's exercise of jurisdiction in

――――――――――

[4] Even if we found the 1986 Orders to be ambiguous as applied to the Direct Actions, and even if we concluded that it would be proper to look to the parties' communications to resolve that ambiguity, it is far from clear that respondents would be entitled to upset the Bankruptcy Court's interpretation of the 1986 Orders.  Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference.  See *In re Shenango Group Inc.*, 501 F. 3d 338, 346 (CA3 2007); *In re Dow Corning Corp.*, 456 F. 3d 668, 675 (CA6 2006); *In re Optical Technologies, Inc.*, 425 F. 3d 1294, 1300 (CA11 2005); *In re Dial Business Forms, Inc.*, 341 F. 3d 738, 744 (CA8 2003); *In re National Gypsum Co.*, 219 F. 3d 478, 484 (CA5 2000); *In re Casse*, 198 F. 3d 327, 333 (CA2 1999); *In re Tomlin*, 105 F. 3d 933, 941 (CA4 1997); *Monarch Life Ins. Co.* v. *Ropes & Gray*, 65 F. 3d 973, 983 (CA1 1995); *In re Weber*, 25 F. 3d 413, 416 (CA7 1994).  Because the 1986 Orders clearly cover the Direct Actions, we need not determine the proper standard of review.

1986.

On direct appeal of the 1986 Orders, anyone who ob-
jected was free to argue that the Bankruptcy Court had
exceeded its jurisdiction, and the District Court or Court
of Appeals could have raised such concerns *sua sponte.* In
fact, one objector argued just that. In *MacArthur*, a dis-
tributor of Manville asbestos claimed to be a coinsured
under certain Manville insurance policies and argued that
the 1986 Orders exceeded the Bankruptcy Court's jurisdic-
tion by preventing the distributor from recovering under
the policies; the Second Circuit disagreed, concluding that
the Bankruptcy Court had not stepped outside its jurisdic-
tion or statutory authority.[5] See 837 F. 2d, at 91–94. But
once the 1986 Orders became final on direct review
(whether or not proper exercises of bankruptcy court
jurisdiction and power), they became res judicata to the
"'parties and those in privity with them, not only as to
every matter which was offered and received to sustain or
defeat the claim or demand, but as to any other admissible
matter which might have been offered for that purpose.'"
*Nevada* v. *United States*, 463 U. S. 110, 130 (1983) (quot-
ing *Cromwell* v. *County of Sac*, 94 U. S. 351, 352 (1877)).

Those orders are not any the less preclusive because the
attack is on the Bankruptcy Court's conformity with its
subject-matter jurisdiction, for "[e]ven subject-matter
jurisdiction . . . may not be attacked collaterally." *Kon-*

_____

[5] We agree with the Court of Appeals that *MacArthur* only resolved
the narrow question whether the Bankruptcy Court could enjoin
derivative claims against the insurers and did not address whether the
1986 Orders, in their entirety, were proper. We note *MacArthur* merely
to illustrate the obvious: the 1986 Orders were subject to challenge, on
jurisdictional grounds or otherwise, on direct review. The dissent
suggests that *MacArthur* limited the scope of the 1986 Orders to
derivative claims, see *post*, at 1, 7–9, but it did not. The question
whether the Bankruptcy Court had enjoined or could properly enjoin
nonderivative claims was not at issue in *MacArthur* and the court did
not answer it.

*trick* v. *Ryan*, 540 U. S. 443, 455, n. 9 (2004).   See also *Chicot County Drainage Dist.* v. *Baxter State Bank*, 308 U. S. 371, 376 (1940) ("[Federal courts] are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act.  Their determinations of such questions, while open to direct review, may not be assailed collaterally").   So long as respondents or those in privity with them were parties to the Manville bankruptcy proceeding, and were given a fair chance to challenge the Bankruptcy Court's subject-matter jurisdiction, they cannot challenge it now by resisting enforcement of the 1986 Orders.   See *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694, 702, n. 9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment"); *Chicot County*, *supra*, at 375 ("[T]hese bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it").[6]

———————

[6] The rule is not absolute, and we have recognized rare situations in which subject-matter jurisdiction is subject to collateral attack.  See, *e.g., United States* v. *United States Fidelity & Guaranty Co.*, 309 U. S. 506, 514 (1940) (a collateral attack on subject-matter jurisdiction is permissible "where the issue is the waiver of [sovereign] immunity"); *Kalb* v. *Feuerstein*, 308 U. S. 433, 439–440, 444 (1940) (where debtor's petition for relief was pending in bankruptcy court and federal statute affirmatively divested other courts of jurisdiction to continue foreclosure proceedings, state-court foreclosure judgment was subject to collateral attack).   More broadly, the Restatement (Second) of Judgments §12, p. 115 (1980), describes three exceptional circumstances in which a collateral attack on subject-matter jurisdiction is permitted:

"(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of

The willingness of the Court of Appeals to entertain this sort of collateral attack cannot be squared with res judicata and the practical necessity served by that rule. "It is just as important that there should be a place to end as that there should be a place to begin litigation," *Stoll* v. *Gottlieb*, 305 U. S. 165, 172 (1938), and the need for finality forbids a court called upon to enforce a final order to "tunnel back . . . for the purpose of reassessing prior jurisdiction de novo," *In re Optical Technologies, Inc.*, 425 F. 3d 1294, 1308 (CA11 2005). If the law were otherwise, and "courts could evaluate the jurisdiction that they may or may not have had to issue a final judgment, the rules of res judicata . . . would be entirely short-circuited." *Id.*, at 1307; see *Willy* v. *Coastal Corp.*, 503 U. S. 131, 137 (1992) ("[T]he practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject-matter jurisdiction"). Almost a quarter-century after the 1986 Orders were entered, the time to prune them is over.[7]

_____

authority; or

"(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

"(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."

This is no occasion to address whether we adopt all of these exceptions. Respondents do not claim any of them, and we do not see how any would apply here. This is not a situation, for example, in which a bankruptcy court decided to conduct a criminal trial, or to resolve a custody dispute, matters "so plainly beyond the court's jurisdiction" that a different result might be called for.

[7] Respondents point out that it is Travelers, not they, who moved the Bankruptcy Court to enforce the 1986 Orders. But who began the present proceedings has no bearing on the application of res judicata; to the extent respondents argue that the 1986 Orders should not be enforced according to their terms because of a jurisdictional flaw in 1986, this argument is an impermissible collateral attack. And to the extent respondents disclaim any initial intent to mount such an attack,

## III

Our holding is narrow. We do not resolve whether a bankruptcy court, in 1986 or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing. As the Court of Appeals noted, in 1994 Congress explicitly authorized bankruptcy courts, in some circumstances, to enjoin actions against a non-debtor "alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability . . . arises by reason of . . . the third party's provision of insurance to the debtor or a related party," and to channel those claims to a trust for payments to asbestos claimants. 11 U. S. C. §524 (g)(4)(A)(ii). On direct review today, a channeling injunction of the sort issued by the Bankruptcy Court in 1986 would have to be measured against the requirements of §524 (to begin with, at least). But owing to the posture of this litigation, we do not address the scope of an injunction authorized by that section.[8]

Nor do we decide whether any particular respondent is bound by the 1986 Orders. We have assumed that respondents are bound, but the Court of Appeals did not consider this question. Chubb, in fact, relying on *Amchem Products, Inc.* v. *Windsor*, 521 U. S. 591 (1997), and *Ortiz* v. *Fibreboard Corp.*, 527 U. S. 815 (1999), has maintained that it was not given constitutionally sufficient notice of the 1986 Orders, so that due process absolves it from following them, whatever their scope. See 340 B. R., at 68. The District Court rejected this argument, *id.*, at 68–69, but the Court of Appeals did not reach it, 517 F. 3d, at 60,

_____

this too is irrelevant, since the decision of the Court of Appeals is what we review and find at odds with finality.

[8] Section 524(h) provides that under some circumstances §524(g) operates retroactively to validate an injunction. We need not decide whether those circumstances are present here.

n. 17.  On remand, the Court of Appeals can take up this objection and any others that respondents have preserved.

### IV

We reverse the judgment of the Court of Appeals and remand for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

Nos. 08–295 and 08–307

---

THE TRAVELERS INDEMNITY COMPANY, ET AL.,
PETITIONERS
08–295                 *v.*
PEARLIE BAILEY ET AL.


COMMON LAW SETTLEMENT COUNSEL,
PETITIONER
08–307                 *v.*
PEARLIE BAILEY ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 18, 2009]

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins,
dissenting.

The Court holds that the plain terms of an injunction
entered by the Bankruptcy Court as part of the 1986
reorganization of Johns-Manville Corporation (Manville)
bar actions against Manville's insurers for their own
wrongdoing. I disagree. In my view, the injunction bars
only those claims against Manville's insurers seeking to
recover from the bankruptcy estate for Manville's miscon-
duct, not those claims seeking to recover against the in-
surers for their own misconduct. This interpretation
respects the limits of the Bankruptcy Court's power; it is
consistent with the Court of Appeals' understanding when
it upheld the 1986 injunction on direct review and with
Congress' codification of the Manville bankruptcy ap-
proach for future asbestos proceedings in 11 U. S. C.
§524(g); and it makes sense of Travelers' payment of $445

million in 2004 in exchange for a Bankruptcy Court order that supposedly "clarified" an unambiguous injunction.

Because the 1986 injunction has never meant what the Court today assumes, respondents' challenge is not an impermissible collateral attack. The Court of Appeals correctly concluded that the Bankruptcy Court's 2004 order improperly enjoined the state-law claims at issue in this proceeding.

I

At the heart of the dispute in this litigation is the distinction between two types of lawsuits seeking recovery from Manville's primary insurer, The Travelers Indemnity Company, and its affiliates (together, Travelers). The first class, which I shall call "insurer actions," comprises suits in which the plaintiff is asserting that Travelers, as an insurer of Manville, has a duty to satisfy the plaintiff's claim against Manville. Plaintiffs in that class include not only members of the public exposed to asbestos but also Manville factory workers and vendors of Manville products. The second class, which I shall call "independent actions," comprises suits in which the plaintiff is asserting that Travelers is liable for its own misconduct. The plaintiffs in these suits have alleged both violations of state consumer-protection laws and breaches of common-law duties. See *ante*, at 4.

Suits that are called "direct actions" in the proceedings below and in the Court's opinion may fall in either category, but as the Court acknowledges the "true" definition of that term describes only insurer actions. *Ante,* at 4–5, n. 2; see Black's Law Dictionary 491 (8th ed. 2004). True direct actions are lawsuits in which a plaintiff claims that she was injured by Manville and seeks recovery directly from its insurer without first obtaining a judgment against Manville. The global settlement that made the 1986 reorganization of Manville possible clearly encom-

passed all such direct actions; Manville's insurers paid
$770 million, including $80 million from Travelers, into
the Manville Personal Injury Settlement Trust (Manville
Trust) to which these actions would be channeled. But
many of the claims that gave rise to the instant litigation
allege no breach of duty by Manville and seek no recovery
from the Manville Trust. See *ante,* at 4–5, n. 2. They are
claims against Travelers based on its own alleged viola-
tions of state statutes and common-law rules. Thus, even
though the Court calls these claims "direct actions," they
are nothing of the sort. They are independent actions.

Some of the independent actions are based on facts
concerning Travelers' insurance relationship with Man-
ville. A number of suits, for example, allege that Travel-
ers acquired information about asbestos-related hazards
from Manville that it had a duty to disclose to third par-
ties.[1] This sort of factual nexus does not, however, trans-
form an independent action into an insurer action. In-
stead, the question remains whether a suit seeks to
recover from Travelers for Manville's wrongdoing or in-
stead seeks to recover from Travelers for its own wrongdo-
ing, making no claim on Manville's insurance policy pro-
ceeds or other assets of the Manville bankruptcy estate.

Recognizing the distinction between insurer actions and
independent actions, the Court of Appeals held that the
Bankruptcy Court had improperly enjoined the latter in
its 2004 order.[2] Without ruling on the extent of the Bank-
ruptcy Court's power, see *ante*, at 17, the Court today

_____

[1] The theories asserted in many of the state-law actions are novel,
and, as the Court of Appeals noted, these claims "have met with almost
universal failure in the state courts." *In re Johns-Manville Corp.,* 517
F. 3d 52, 68 (CA2 2008).

[2] The Court of Appeals noted that the Bankruptcy Court had not con-
sidered whether the various actions at issue were properly classified as
insurer actions or independent actions, and it remanded for the Bank-
ruptcy Court to undertake this assessment.

concludes that the 1986 injunction unambiguously barred independent actions and that the Bankruptcy Court's 2004 order simply clarified, and did not enlarge, the scope of that injunction. Based on that premise, the Court holds that respondents are challenging the Bankruptcy Court's authority to have issued the injunction in 1986, and it deems the challenge an impermissible collateral attack. I disagree with both the Court's understanding of the 1986 injunction and its attendant res judicata analysis.

## II

The 1986 order of the Bankruptcy Court approving the insurance settlement agreements (Insurance Settlement Order), which was incorporated by reference in the order confirming Manville's plan of reorganization, includes three related protections for Manville's insurers, each focused on the company's insurance policies. It releases the insurers from all "Policy Claims," channels these claims to the Manville Trust, and permanently enjoins all persons from commencing or continuing a proceeding for "Policy Claims" against a settling insurer. App. to Pet. for Cert. 445a–446a. The Insurance Settlement Order defines "Policy Claims" as:

> "any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against any or all members of the [Manville] Group or against any or all members of the Settling Insurer Group *based upon, arising out of or relating to any or all of the Policies.*" *Id.*, at 439a (emphasis added).[3]

---

[3] As the Court notes, the order confirming Manville's reorganization plan contains an additional injunction barring claims against the settling insurance companies. *Ante*, at 4, n. 1. The language in that order enjoins only insurer actions. See App. to Pet. for Cert. 286a–288a

Focusing on the italicized phrase, and particularly the term "relating to," the Court declares that this language "is not even remotely amenable" to a construction that excludes independent actions and "clearly reaches factual assertions that relate in a more comprehensive way to Travelers' dealings with Manville." *Ante*, at 10–11. Thus, it concludes that "the plain terms of [the] court order unambiguously" bar independent actions. *Ante,* at 12.

The Court doth protest too much. Indeed, despite its insistence that the definition of "Policy Claims" is unambiguous, the Court quickly concludes that it cannot apply the "based upon, arising out of or relating to" language literally because there is a "cutoff at some point, where the connection between the insurer's action complained of and the insurance coverage would be thin to the point of absurd." *Ante,* at 11. Presumably, for instance, the Court would not deem enjoined a state-law claim for personal injuries caused by a Travelers' agent's reckless driving while en route to the courthouse to defend Manville even though, in a literal sense, this suit relates to (perhaps even arises out of) Travelers' performance of its policy obligations to Manville. The Court determines that it need not "stake out the ultimate bounds of the injunction" because it can rely on the Bankruptcy Court's "uncontested factual findings" that the particular independent actions at issue fall within the category that it had intended to enjoin. *Ibid.*

If the definition of the term "Policy Claims" is not amenable to a purely literal construction and the Court must look beyond the four corners of the Insurance Settlement

---

(enjoining actions against settling insurance companies seeking, directly or indirectly, to recover on or with respect to a "Claim, Interest, or Other Asbestos Obligation"); *id.*, at 56a, n. 6 (defining "Other Asbestos Obligation" as an obligation arising directly or indirectly from acts or omissions of a debtor). The parties accordingly focus on whether the Insurance Settlement Agreement enjoins independent actions.

Order to ascertain its meaning, however, the Bankruptcy Court's factual findings in 2004 are not the best guide. I would instead construe the order with reference to the limits of the Bankruptcy Court's authority—limits that were well understood by the insurers during the original settlement negotiations—and with reference to the Court of Appeals' interpretation of the Insurance Settlement Order when it upheld it against a jurisdictional challenge in 1988.

We should not lightly assume that the Bankruptcy Court entered an order that exceeded its authority. When a bankruptcy proceeding is commenced, the bankruptcy court acquires control of the debtor's assets and the power to discharge its debts. A bankruptcy court has no authority, however, to adjudicate, settle, or enjoin claims against nondebtors that do not affect the debtor's estate. Because Travelers' insurance policies were a significant asset of the Manville bankruptcy estate, the Bankruptcy Court had the power to channel claims to the insurance proceeds to the Manville Trust. But this by no means gave it the power to enjoin claims against nondebtors like Travelers that had no impact on the bankruptcy estate. Thus, even accepting the Bankruptcy Court's representation in 2004 that it had "meant to provide the broadest protection possible" to the settling insurers, App. to Pet. for Cert. 172a, such relief could not include protection from independent actions.

That the Bankruptcy Court was without authority to enjoin independent actions was well understood by both Manville and Travelers during their settlement negotiations. In Manville's memorandum in support of the Insurance Settlement Agreement, it clarified that it did "not seek to have [the Bankruptcy] Court release its Settling Insurers from claims by third parties based on the Insurer's own tortious misconduct towards the third party" but rather sought only to release the insurers "from the

rights Manville might itself have against them or rights derivative of Manville's rights under the policies being compromised and settled." App. for Respondent Chubb Indemnity Insurance Co. 5a. This understanding reflected not only the basic fact that the settlement was between Manville and its insurers (and not third parties), but also the parties' knowledge that the "Second Circuit [had held] that the bankruptcy courts lack power to discharge 'independent' claims of third parties against nondebtors." *Id.*, at 5a–6a.

Travelers similarly acknowledged the limits of the Bankruptcy Court's power. Noting that "[t]he court has *in rem* jurisdiction over the Policies and thus the power to enter appropriate orders to protect that jurisdiction," it stated that "the injunction is intended only to restrain claims against the res (*i.e.*, the Policies) which are or may be asserted, against the Settling Insurers." *Id.*, at 13a–14a;[4] see also *id.*, at 10a (memorandum of the legal representative of the Bankruptcy Court noting that "[a]ll parties seem to agree that any injunction, channeling order and release is limited to this Court's jurisdiction over the *res*"). In short, it was apparent to the settling parties, and no doubt also to the Bankruptcy Court, that the court lacked the power to enjoin third-party claims against nondebtors that did not affect the debtor's estate.

When the Court of Appeals upheld the injunction barring the assertion of "Policy Claims" against Manville's insurers it, too, understood these limits of the Bankruptcy Court's authority. MacArthur Corporation, a Manville asbestos distributor, claimed to be a coinsured under Manville's insurance policies by virtue of "vendor en-

———————

[4]This statement of Travelers' intent belies the Bankruptcy Court's suggestion that enjoining independent actions was a necessary condition of Travelers' contribution to the Manville estate. See App. to Pet. for Cert. 170a–173a.

dorsements" in those policies entitling distributors to insurance coverage for claims arising from their sale of Manville products. MacArthur argued that the Bankruptcy Court lacked authority to issue the Insurance Settlement Order, which prevented it from suing the insurers, because this order constituted a *de facto* discharge in bankruptcy of nondebtor parties not entitled to Chapter 11 protection. In rejecting MacArthur's argument, the Court of Appeals did not hold that the Bankruptcy Court possessed the authority to enjoin all actions against the insurers bearing some factual connection to Manville. Rather, it held that MacArthur had misconstrued the scope of the Bankruptcy Court's order, which precluded "only those suits against the settling insurers that arise out of or relate to Manville's insurance policies." *MacArthur Co.* v. *Johns-Manville Corp.*, 837 F. 2d 89, 91 (CA2 1988).

The Court of Appeals reasoned that this language enjoined MacArthur's claims because "MacArthur's rights as an insured vendor are completely derivative of Manville's rights as the primary insured." *Id.*, at 92. Just as asbestos victims were "barred from asserting direct actions against the insurers," so too was MacArthur barred because "*in both instances, third parties seek to collect out of the proceeds of Manville's insurance policies on the basis of Manville's conduct.*" *Id.*, at 92–93 (emphasis added). The Court of Appeals further held that, because Manville's policies were property of the bankruptcy estate, the Bankruptcy Court had "properly issued the orders pursuant to its equitable and statutory powers to dispose of the debtor's property free and clear of third-party interests and to channel those interests to the proceeds thereby created." *Id.*, at 91.

As the Court of Appeals recognized in the instant proceedings, its earlier interpretation of the Insurance Settlement Order in *MacArthur* did not and does not extend

to the independent actions at issue in the instant suit: "Travelers candidly admits that both the statutory and common law claims seek damages from Travelers that are *unrelated* to the policy proceeds, quite unlike the claims in *MacArthur* . . . where plaintiffs sought indemnification or compensation for the tortious wrongs of Manville to be paid out of the proceeds of Manville's insurance policies." *In re Johns-Manville Corp.,* 517 F. 3d 52, 63 (CA2 2008). Also in contrast to *MacArthur*, "the claims at issue here do not seek to collect on the basis of Manville's conduct. . . . Instead, the Plaintiffs seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct." *Ibid.*

The Court of Appeals' interpretation of the 1986 Insurance Settlement Order as enjoining only insurer actions and not independent actions is further supported by a statutory provision patterned after the Manville settlement. In the Bankruptcy Reform Act of 1994, Congress adopted 11 U. S. C. §524(g) to expressly authorize the approach of the Manville bankruptcy in future asbestos-related bankruptcies. In granting bankruptcy courts the power to provide injunctive relief to nondebtors, Congress stated that courts may bar an action directed against a third party who "is alleged to be *directly or indirectly liable for the conduct of, claims against, or demands on the debtor* to the extent such alleged liability of such third party arises by reason of . . . the third party's provision of insurance to the debtor or a related party." §524(g)(4)(A)(ii) (emphasis added). As the italicized language makes clear, the statute permits a bankruptcy court to enjoin actions seeking to proceed against a nondebtor insurer for a debtor's wrongdoing, but it does not confer power to enjoin independent actions arising out of the insurer's own wrongdoing. See generally *In re Combustion Engineering, Inc.*, 391 F. 3d 190, 235, n. 47 (CA3 2004) (explaining that §524(g), like the Manville injunction, is

limited to insurer actions). Had Congress interpreted "Policy Claims" in the manner the Court does today, and had it sought to codify that definition, it would have used broader language.

Finally, it is worth asking why Travelers paid more than $400 million in 2004 to three new settlement funds in exchange for the Bankruptcy Court's order "clarifying" that the independent actions "are—and always have been—permanently barred" by the 1986 injunction. App. to Pet. for Cert. 170a. If the 1986 injunction were as clear as the Court assumes, surely Travelers would not have paid $445 million—more than five times the amount of its initial contribution to the Manville Trust—to obtain a redundant piece of paper.

In sum, I believe the 1986 Insurance Settlement Order did not enjoin independent actions of the sort giving rise to these proceedings. A contrary conclusion ignores the limits of the Bankruptcy Court's authority, the Court of Appeals' interpretation of the order upheld on direct review in 1988, Congress' approval of the Manville reorganization, and Travelers' own conduct during both the 1986 and 2004 settlement negotiations.

## III

The Court's holding that respondents' challenge is an impermissible collateral attack is predicated on its determination that the 1986 Insurance Settlement Order plainly enjoined their independent actions. See *ante*, at 13–14. Because I disagree with this premise, I also disagree with the Court's preclusion analysis. In challenging the Bankruptcy Court's 2004 order "clarifying" the scope of the Insurance Settlement Order, respondents were in fact timely appealing an order that *rewrote* the scope of the 1986 injunctions. Their objection could not have been raised on direct appeal of the 1986 order because it was not an objection to anything in that order. And, of course,

the Court of Appeals did not rule on a challenge to the enjoining of independent actions during direct review, as the Court acknowledges. See *ante*, at 14, n. 5. To the contrary, it interpreted the 1986 order as reaching only insurer actions. Thus, there neither was nor reasonably could have been a prior challenge that the 1986 order impermissibly enjoined independent actions.

Because the Court regards respondents' challenge as a collateral attack, it brushes aside their jurisdictional objection to the Bankruptcy Court's 2004 order on the ground that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Ante*, at 13. But neither respondents nor the Court of Appeals contested that point. Rather, respondents argued that the Bankruptcy Court was not merely interpreting and enforcing its prior orders and that it had no jurisdiction to enjoin the independent actions when it approved the 2004 settlements. The Court of Appeals accordingly examined whether the 2004 order improperly expanded the scope of the 1986 injunction and concluded that it did, thereby enjoining claims that were beyond the Bankruptcy Court's power to enjoin.

In my view, the judgment of the Court of Appeals was correct. The 1986 Insurance Settlement Order did not bar independent actions, and the Bankruptcy Court lacked any basis for enjoining those actions in 2004. The independent actions have no effect on the bankruptcy estate, and "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex Corp.* v. *Edwards*, 514 U. S. 300, 309, n. 6 (1995). The Court of Appeals thus correctly concluded that the Bankruptcy Court had impermissibly enjoined "claims against Travelers that were predicated, as a matter of state law, on Travelers' own alleged misconduct and were unrelated to Manville's insurance policy proceeds and the *res* of the Manville estate." 517 F. 3d, at 68.

IV

Because I am persuaded that the 1986 Insurance Settlement Order did not encompass independent actions and that that Bankruptcy Court improperly enjoined such actions in 2004, I respectfully dissent.